UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

STEPHANIE McCUTCHEON,

    Plaintiff,

v.                                          CIVIL ACTION NO.  5:21-cv-00393

ENLIVANT ES, LLC, *a foreign limited liability company doing business as Seasons Place Assisted Living Facility,*

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Enlivant ES, LLC's ("Enlivant") Motion to Dismiss, filed on July 16, 2021. [Doc. 4]. The motion is fully briefed and ready for adjudication.

### I.

Stephanie McCutcheon is a West Virginia resident. Enlivant, doing business as Seasons Place Assisted Living ("Seasons"), is a Delaware limited liability company headquartered in Chicago, Illinois. Seasons is an assisted living facility located in Lewisburg, West Virginia. [Doc. 1-1 ¶ 2]. Ms. McCutcheon was employed at Seasons for five years. [Doc. 1-1 ¶ 5].

On April 14, 2021, Enlivant told its employees it "expect[ed]" them to be vaccinated against COVID-19 no later than June 1, 2021. [Doc. 1-1 ¶ 6]. Season's executive director encouraged Ms. McCutcheon numerous times to get the vaccine. [Doc. 1-1 ¶ 7]. During these interactions, Seasons represented to her that the vaccine had received Food and Drug Administration ("FDA") approval and was safe. [Doc. 1-1 ¶ 7]. Ms. McCutcheon, however, "had

performed her own research . . . and . . . determined that the appropriate personal medical decision for her was to not take the COVID-19 vaccine." [Doc. 1-1 ¶ 8]. Ms. McCutcheon repeatedly informed Seasons she would not get the vaccine. [Doc. 1-1 ¶ 9]. Seasons, in turn, informed her orally that vaccination was mandatory for all employees. [Doc. 1-1 ¶ 10].

While initially refusing to put the warning in writing, Seasons sent the following to Ms. McCutcheon on May 25, 2021:

> Dear Employee,
>
> As you know, leading authorities now instruct that vaccination is the most effective method to combat the spread of COVID-19 and minimize its impacts. Similarly, our experience has shown that being unvaccinated puts at risk the safety and well-being, and lives of our residents, employees and visitors, and has a significant impact on our daily business operations. As such, to best protect our residents, employees, and visitors, Enlivant determined that beginning June 1, 2021, all Enlivant employees at your Community must be vaccinated.
>
> **Therefore, due to your personal choice to remain unvaccinated contrary to the essential functions of your job and Enlivant's job requirements, we are accepting your voluntary resignation effective June 1, 2021 . . . .**

[Doc. 1-1 ¶ 11]. On June 1, 2021, Ms. McCutcheon was discharged.

On June 6, 2021, Ms. McCutcheon instituted this action against Seasons. She alleges a retaliatory discharge claim arising under *Harless v. First National Bank*, 162 W. Va. 116, 246 S.E.2d 270 (1978). [Doc. 1-1]. She alleges her termination for refusing an "unapproved," "experimental" vaccine violates the public policy of West Virginia. She seeks compensatory damages, punitive damages, and declaratory relief.

On July 9, 2021, Enlivant removed based upon diversity grounds. [Doc. 1]. On July 16, 2021, Enlivant moved to dismiss for failure to state a claim under *Federal Rule of Civil Procedure* 12(b)(6). [Doc. 4].

## II.

Rule 8(a)(2) requires a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted."

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds by Twombly*, 550 U.S. at 562–63); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, to show an "entitlement to relief" there must be "more than labels and conclusions." *Twombly*, 550 U.S. at 558. It is well settled that "a formulaic recitation of the elements of a cause of action will not do." *E.g.*, *id.* at 555; *McCleary-Evans*, 780 F.3d at 585.

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal quotation marks and citation omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

As noted in *Iqbal*, the Supreme Court of the United States has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual

allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (quoting *Twombly*, 550 U.S. at 555); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

If the termination of an at-will employee contravenes a "substantial [West Virginia] public policy," the employee may pursue a retaliatory discharge claim. Syl. Pt. 1, *Harless*, 162 W. Va. at 116, 246 S.E.2d at 271; *see also* Syl. Pt. 4, *Roth v. DeFeliceCare, Inc.*, 226 W. Va. 214, 217, 700 S.E.2d 183, 186 (2010). The claim requires satisfaction of the following elements:

> (1) that a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
>
> (2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
>
> (3) The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
>
> (4) The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter*, 238 W. Va. 375, 386, 795 S.E.2d 530, 541 (2016) (citing *Feliciano v. 7-Eleven, Inc.*, 210 W. Va. 740, 750, 559 S.E.2d 713, 723 (2001)).

The existence of a clear public policy in West Virginia "is a question of law, rather than a question of fact for a jury." Syl. Pt. 1, *Cordle v. Gen. Hugh Mercer Corp.*, 174 W. Va. 321, 322, 325 S.E.2d 111, 111 (1984). To identify a substantial public policy, courts look "to established precepts in the State's constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. Pt. 2, *Birthisel v. Tri-Cities Health Servs. Corp.*, 188 W. Va. 371, 371, 424

S.E.2d 606, 606 (1992). It is not enough that the public policy exist. It must also be substantial enough to "provide specific guidance to a reasonable person." *Id.*; *Feliciano*, 559 S.E.2d at 718 ("[T]o be substantial, a public policy must not just be recognizable as such but must be so widely regarded as to be evident to employers and employees alike.").

### III.

Ms. McCutcheon contends mandatory vaccinations offend West Virginia public policy. She notes that neither the Legislature nor the Executive have mandated vaccinations for state employees. Respecting the Legislature, *Harless* claims are "generally based on a [positive expression of] public policy articulated by" that Body, not on the absence thereof. *Shell v. Metro. Life Ins., Co.*, 183 W. Va. 407, 413, 396 S.E.2d 174, 180 (1990); *Birthisel*, 188 W. Va. at 376, 424 S.E.2d at 611 ("[C]ourts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.").

In view of this settled case law, the legislative vacuum, and the Executive's disinclination to enact a vaccine mandate, Ms. McCutcheon has failed to show a private, mandatory vaccination regime is contrary to West Virginia public policy. Just the opposite appears true. West Virginia has long required inoculations for students. *See* W. Va. Code § 16-3-4. Furthermore, there are abundant public efforts encouraging COVID-19 vaccinations. These efforts align well with the century-old Supreme Court mandate legalizing state-imposed mandatory vaccination for contagious diseases. *Jacobson v. Massachusetts*, 197 U.S. 11, 38–39 (1905).

Ms. McCutcheon also asserts Season's vaccine mandate violates federal law. She first cites 21 U.S.C. § 360bbb-3(e)(1)(A). [Doc. 1-1 ¶ 29]. This Section allows the Secretary of Health and Human Services to introduce into interstate commerce medical products intended for

use in an emergency. 21 U.S.C. § 360bbb-3. It also requires the Secretary to ensure product recipients understand the "the significant known and potential benefits and risks of the emergency use of the product, and of the extent to which such benefits and risks are unknown" and "of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." *Id.*

Ms. McCutcheon contends none of the COVID-19 vaccines had been fully approved by the FDA when she was terminated, and she thus could not be compelled to suffer an "unapproved" inoculation. [Doc. 1-1 ¶ 28.] Ms. McCutcheon misreads § 360bbb-3(e)(1)(A). The provision outlines the rights and responsibilities of the Secretary of Health and Human Services in an emergency; it has no impact upon the rights and responsibilities of private employers.

Second, Ms. McCutcheon points to the Nuremberg Code, which states "voluntary consent of the human subject is absolutely essential." [Doc. 1-1 ¶ 32]. Ms. McCutcheon compares the federally approved COVID-19 vaccine to the inhumane and often deadly medical experiments conducted by the Nazis. [Doc. 1-1 ¶ 31]. That base analogy does not merit analysis.

Ms. McCutcheon's claims are similar to those offered in *Bridges v. Houston Methodist Hosp.*, --- F. Supp. 3d ---, Case No. H-21-1774, 2012 WL 2399994 (S.D. Tex. June 12, 2021). Among other good observations, Judge Hughes correctly noted that vaccine mandates by public employers do not coerce employees. *Id.* at *7. The same might be said of private employers -- particularly those in the medical and assisted living industries -- which impose vaccination policies to protect their residents, patients, and staff members. Ms. McCutcheon is free to accept or refuse the COVID-19 vaccine. If she refuses, she need only to pursue employment elsewhere.

## IV.

Based on the foregoing discussion, the Court **GRANTS** Season's Motion to Dismiss. [Doc. 4].

The Court directs the Clerk to transmit a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER: November 9, 2021

Frank W. Volk
United States District Judge